UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re *Ex Parte* Application of Hyo-Seob Oh,<br><br>　　　　　　　　Applicant,<br><br>For an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery for Use in Foreign Proceedings. | Case No.: 22-mc-1649-DDL<br><br>**REPORT AND RECOMMENDATION FOR ORDER DENYING *EX PARTE* APPLICATION FOR ORDER PERMITTING SUBPOENA PURSUANT TO 28 U.S.C. § 1782** |

　　　This Report and Recommendation is submitted to Chief United States District Judge Dana M. Sabraw pursuant to 28 U.S.C. § 636(b).[1]

　　　On November 8, 2022, Applicant Hyo-Seob Oh ("Applicant") filed an *ex parte* application ("Application") pursuant to 28 U.S.C. § 1782(a), seeking an order authorizing the issuance of a subpoena for a deposition of Sandip "Micky" S. Minhas ("Minhas") for use in pending litigation in South Korea. Minhas opposes the Application. For the reasons

---

[1] 　A Report and Recommendation is necessary because applications for discovery under 28 U.S.C. § 1782 are dispositive matters for which a magistrate judge may not render a final decision absent consent of all parties to the magistrate judge's jurisdiction. *See CPC Patent Technologies Pty Ltd. v. Apple, Inc.*, 34 F.4th 801, 807-08 (9th Cir. 2022).

1

set forth below, the Court **RECOMMENDS** that Applicant's *ex parte* Application be **DENIED**.

## I.
## **BACKGROUND**

On May 14, 2020, Applicant filed a lawsuit in the Seoul Central District Court against LG Electronics Inc. ("LG") seeking compensation under Korea's Invention Promotion Act ("IPA") for inventions he alleges he developed while employed by LG. *See* Dkt. No. 1-2 at 16-43.[2] At issue in this Application are two separate but nearly identical statements signed by Minhas and dated June 30, 2021, and November 9, 2021, respectively ("Minhas Statements"). *See id.* at 28-35; Dkt. No. 1 at 5. The Minhas Statements concern the background and formation of two agreements between LG and Microsoft Technology Licensing LLC ("LG/Microsoft Agreements") governing the purchase and sale of certain patents, including the patents at issue in the Korean litigation. On or about March 23, 2015, Minhas executed the LG/Microsoft Agreements on behalf of Microsoft Corporation in his capacity as Microsoft's Chief Patent Counsel. The LG/Microsoft Agreements include the alleged value of the patents at issue in the Korean litigation. *See* Dkt. No. 1-2 at 52-64.

Applicant questions the veracity and accuracy of the Minhas Statements—which Applicant contends undervalue his patents—and alleges that Minhas made assertions in the Minhas Statements that contradict the LG/Microsoft Agreements. *See generally* Dkt. No. 1 at 5-9. Because LG is relying on the Minhas Statements in the Korean litigation to argue that Applicant's patents had minimal value, Applicant seeks authorization to depose Minhas and to compel Minhas to produce documents pertaining to the Minhas Statements.

///
///
///

---

[2]   Page citations are to the CM/ECF page numbers.

## II.

## LEGAL STANDARD

Under Section 1782(a), a district court may order a person who resides or is found in the district to give testimony or produce documents for use in a foreign legal proceeding. The applicant must satisfy three statutory requirements: first, the person from whom discovery is sought must "reside or [be] found" within the district; second, the discovery must be "for use in a proceeding in a foreign or international tribunal"; and third, the request must be made "by a foreign or international tribunal or upon the application of any interested person." 28 U.S.C. § 1782(a). "The party seeking the discovery bears the burden of establishing that the statutory requirements are met." *In re Escallón*, 323 F. Supp. 3d 552, 555 (S.D.N.Y. 2018).

Even when an applicant satisfies each of the statutory requirements, a district court retains discretion to grant or deny discovery under Section 1782(a). A district court may consider the following factors in exercising its discretion: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding"; (2) the nature of the foreign tribunal, the character of the proceedings underway, and the receptivity of the foreign tribunal to U.S. federal court assistance; (3) whether the Section 1782(a) request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies"; and (4) whether the request is "unduly intrusive or burdensome." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004).

"A district court's discretion is to be exercised in view of the twin aims of Section 1782: providing efficient assistance to participants in international litigation, and encouraging foreign countries by example to provide similar assistance to our courts." *Palantir Techs., Inc. v. Abramowitz*, 415 F.Supp.3d 907, 912 (N.D. Cal. 2019) (citations omitted). "The party seeking discovery need not establish that the information sought would be discoverable under the foreign court's law or that the U.S. would permit the discovery in an analogous domestic proceeding." *Id*.

/ / /

## III.
## DISCUSSION

### A.  Relevant Procedural History

The initial Application filed on November 8, 2022, asserted that Minhas "resides in this District."  Dkt. No. 1 at 13.  On December 28, 2022, Minhas filed his Opposition to the Application asserting, in part, that the Application is not properly filed in this judicial district because he "resides in Texas and does not reside in San Diego."  Dkt. No. 9-1 at 9-10.  In support of his contention, Minhas cited to his own declaration in support of an earlier motion for an extension of time to file an opposition to the Application in which he stated that the declaration was executed in Dallas, Texas.  *Id*. at 9; *see* Dkt. No. 7-2 at 2.  Minhas did not provide any documentary support concerning his place of residence, which Applicant pointed out in his Reply to the Opposition ("Reply").  *See* Dkt. No. 10 at 10.  In his Reply, Applicant included exhibits reflecting various sources which suggest that Minhas maintains a connection to San Diego, including property records, a registry of various deeds held by Minhas for residential property in San Diego over several years, and screen captures of Minhas's LinkedIn profile and various online biographical materials reflecting a location in San Diego.  *See* Dkt. No. 10-1 at 4-13 and 14-26.

On February 17, 2023, the Court held a Status Hearing to discuss its tentative ruling on the Application.  Dkt. No. 27.  In recognition of the fact that Minhas did not have an opportunity to respond to the documentary evidence proffered by Applicant, the Court ordered Minhas to "file briefing regarding his residence and evidence concerning the issue of whether he 'resides or is found' in the Southern District of California, pursuant to 28 U.S.C. § 1782 . . . ."  *Id*.

On February 24, 2023, Minhas filed a sur-reply in which he maintained that he resides in Dallas, Texas and asserted that, although he owns property in San Diego, he "has not used it as a residence since 2008 . . . ."  Dkt. No. 30 at 3.  Still, Minhas failed to provide documentary support for his assertion that he resides in Dallas.

/ / /

On February 28, 2023, the Court ordered Minhas to file "a supplemental declaration with any documentary evidence he wishes the Court to consider in support of his contention that he has resided in Dallas, Texas 'since before Mr. Oh initiated his application.'" Dkt. No. 31. On March 3, 2023, Minhas filed a supplemental declaration in support of his sur-reply. Dkt. No. 34-1. Attached to the declaration were documents and records reflecting that Minhas maintains a residential address in Dallas, including cover pages to his current and prior lease agreements at a Dallas address (*Id*. at 10-12); a Texas driver's license issued to Minhas which is valid from August 22, 2022 through May 14, 2030 (*Id*. at 14); a vehicle registration in Minhas's name issued by the Texas Department of Motor Vehicles which is effective from December 1, 2022 through November 2023 (*Id*. at 16); a record of Minhas's voter registration status with the Texas Secretary of State displaying a "valid from" date of January 1, 2022 and an effective date of November 3, 2020 (*Id*. at 18);[3] Minhas's 2020 and 2021 federal income tax returns (*Id*. at 20, 22); and an account statement from Texans Credit Union dated June 2021 (*Id*. at 24-27).

On March 10, 2023, Applicant filed a response in opposition to Minhas's sur-reply. Dkt. No. 35. In support of his opposition to the sur-reply, Applicant included additional documentary evidence, including a printout or screen capture of Minhas's LinkedIn profile, which stated Minhas's current location as being in San Diego (Dkt. No. 35-1 at 6-8); a transcript of a May 2, 2022, *National Public Radio* interview given by Minhas's wife, Jennifer Minhas ("Mrs. Minhas"), in which the interviewer stated that Mrs. Minhas lives in San Diego and which she did not contest (*Id*. at 10-17); a 2023 Marquette University award recipient announcement featuring Mrs. Minhas, which indicates that she is located in San Diego (*Id*. at 19-21); a *San Diego Union-Tribune* article dated January 26, 2021, that featured Mrs. Minhas and identified her as "Jennifer Minhas of San Diego" (*Id*. at 23-

---

[3] Minhas's voter status is reflected as being in "Suspense." According to the Texas Secretary of State, this means that "the registrar is not certain of [the voter's] residential address." Dkt. No. 34-1 at 18.

31); a Marquette University article dated May 2, 2022, indicating that Jennifer and Micky Minhas donated one million dollars toward a College of Nursing building renovation and expansion campaign (*Id.* at 33-35); an updated version of Minhas's Marquette University Board of Trustees biography in which Minhas's place of residence has been removed (*Id.* at 37; *see* Dkt. No. 10-1 at 21); a printout of Mrs. Minhas's Facebook page indicating a "check-in" at the Mavericks Beach Club in San Diego on January 23, 2022 (*Id.* at 39-42); and a printout of Mrs. Minhas's Facebook activity, which includes a post dated January 21, 2023, in which Mrs. Minhas stated that she was "visiting Phoenix from San Diego . . . ." (*Id.* at 44, 51).

B.  **Analysis**

A threshold issue is whether Minhas is "found" or "resides" in the Southern District of California as required by Section 1782. Applicant did not personally serve Minhas with the Application in the Southern District of California, and Applicant does not contend that Minhas is "found" in this District within the meaning of Section 1782. *See In re Escallón*, 323 F. Supp. 3d at 556 ("To be 'found' in a place . . . under § 1782, requires a person to be physically present in the jurisdiction when served with process."). Rather, Applicant asserts that Minhas "resides in" the Southern District of California. The crux of Applicant's argument is that a person may maintain multiple residences, and Minhas's residence in Dallas does not preclude him from also residing in San Diego. Specifically, Applicant contends that Mrs. Minhas resides in San Diego and that this supports a finding that Minhas also resides in this District regardless of whether Minhas also resides in Dallas.

In support of his argument that a spouse's residence is attributable to a respondent in a Section 1782 application, Applicant cites *In re Matter of Application of Oxus Gold PLC*, No. MISC. 06-82, 2006 WL 2927615 (D.N.J. Oct. 11, 2006). In one regard, *Oxus Gold* is inapposite because the court held that the respondent was "found in" the District of New Jersey and did not reach the question of respondent's residency. But even considering *Oxus Gold*'s statement that courts will look to a spouse's residence as evidence of a Section 1782 respondent's residence, *Oxus Gold* made clear that this is only one factor

in the residency analysis.  In addition to a spouse's residence, *Oxus Gold* recognized that courts have looked to "(2) ownership of property, (3) location of filing for tax purposes, (4) amount of time spent in the United States, and (5) location of full time employment." *Id*. at *5 (citing *In re Kolomoisky*, No. M19-116, 2006 WL 2404332, at *3 (S.D.N.Y. Aug. 18, 2006)).

Application of the *Oxus Gold* factors does not support the conclusion that Minhas resides in the Southern District of California.  The Court assumes, for purposes of this analysis, that Mrs. Minhas resides in San Diego.  Further, Minhas confirmed in his sur-reply that he owns residential property in San Diego.  *See* Dkt. No. 34-1 at 4, ¶ 7.  But the evidence also shows that Minhas is employed in Dallas and has filed his federal income tax returns using his Dallas address for at least the last two years, and time spent in the United States is not a consideration here.  Considered in their totality, these factors do not support the conclusion that Applicant has carried his burden to show that Minhas resides in the Southern District of California.  *See, e.g.*, *Kolomoisky*, 2006 WL 2404332, at *3 (finding that respondent did not reside in the Southern District of New York notwithstanding that his wife and son resided in Manhattan).

Applicant argues that a person may have multiple residences and need not be domiciled where he or she resides.  Dkt. No. 10 at 11; *see* Dkt. No. 35 at 5.  While the meaning of "residence" in the context of Section 1782 does not appear to be well-defined, Courts have generally recognized "residence" and "domicile" as distinct concepts. "Residence is physical, whereas domicile is generally a compound of physical presence plus an intention to make a certain definite place one's permanent abode . . . ." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) (citing *Weible v. United States*, 244 F.2d 158, 163 (9th Cir. 1957) (internal quotation marks omitted)).  In support of his assertion that Minhas maintains multiple residences, including in San Diego, Applicant

/ / /
/ / /
/ / /

cites *Escallón*.[4]  However, *Escallón*'s residency analysis weighs against Applicant's position.

*Escallón* recognized that "the 'resides in' prong of the § 1782 analysis does not require that the respondent be 'domiciled' in the district." *Escallón*, 323 F. Supp. 3d at 557.  The court explained:

> Residency means "an established abode, for personal or business reasons, permanent for a time.  A resident is so determined from the physical fact of that person's living in a particular place.  Residence is the act or fact of living in a given place for some time, while domicile is a person's true, fixed, principal, and permanent home, to which that person intends to return and remain even though currently residing elsewhere.

*Id*. (quoting *Rosario v. I.N.S.*, 962 F.2d. 220, 224 (2d Cir. 1992)).  The *Escallón* court further stated that "the test for 'residency' requires some 'indicia of permanency,'" which refers to "permanency of presence, not the existence of a permanent connection to a particular piece of real estate." *Id*. at 558.  "Mere ownership and control of, and occasional presence in, an apartment does not, by itself, raise an inference that the apartment is the [respondents'] established abode or residence." *Id*.

Applying these principles, the court declined to find that the respondents were residents of the Southern District of New York notwithstanding that they owned and staffed a residential property within the district and received mail there.  *Id.* at 557-58. Importantly, the court relied on a process server's affidavit, which recounted comments from a doorman at the apartment that respondents had left New York earlier that day for "their home in Colombia" with no return date, and respondents "maintain the apartment in the building but spend most of the year out of town." *Id*. at 557 (internal quotation marks omitted).

/ / /

---

[4]  Applicant refers to the case as *In re Lloreda* in his Reply.  *See* Dkt. No. 10 at 11.

Here, Minhas admits to owning property in San Diego (Dkt. No. 34-1 at 4, ¶ 7), but Applicant has not met his burden to show that Minhas is physically present in San Diego. As the *Escallón* court recognized, mere ownership of property does not establish one's physical residence in a particular location. *Id*. at 558. Other than the property records, Applicant has not provided any official documentation reflecting that Minhas resides in San Diego or otherwise maintains an ongoing physical presence in San Diego. Similarly, the fact that Minhas and his wife have the financial resources to donate a substantial amount of funds to their alma mater may indicate that they have the resources to maintain homes in multiple locations, but it does little to further Applicant's assertion of residence because it does not demonstrate physical presence in any location for any amount of time.

Applicant has provided multiple third-party sources, including news articles and biographical profiles, indicating that Minhas and Mrs. Minhas are located in San Diego. *See* Dkt. No. 10-1 at 21, 23, 26; *see also* Dkt. No. 35-1 at 10-17, 19-21, 23-31. In addition, Applicant points out that Minhas's LinkedIn page—which he manages—indicates that he is located in San Diego. Dkt. No. 10 at 11; Dkt. No. 35 at 3. In response, Minhas states in a declaration that he has not resided in San Diego since 2012. Dkt. No. 30-1 at 3-4, ¶ 7; Dkt. No. 34-1 at 4, ¶ 7. He points to the list of professional experience on his profile, which he says does not reflect all his current professional engagements, but which does include full-time positions outside of San Diego since 2012. Dkt. No. 30-1 at 5, ¶ 16; Dkt. No. 34-1 at 5, ¶ 16. Minhas explains that his LinkedIn profile is outdated because he has not updated the profile in many years, and "any inference that [he] currently reside[s] in San Diego, California is inaccurate." Dkt. No. 30-1 at 5, ¶ 16; Dkt. No. 34-1 at 5, ¶ 16.

To counter Applicant's residency contentions, Minhas has provided multiple documents and official records, including a current lease agreement, a current vehicle registration with the Texas Department of Motor Vehicles, and a valid Texas driver's license, all of which indicate some "permanency of presence" in Dallas, even if only for a certain time. Minhas also provided a Dallas address on his federal income tax returns for the past two years. The latter three documents are particularly compelling because they

are recent records issued or prepared for processing by government authorities, and the timing of their issuance or preparation corresponds with the time Minhas asserts he has resided in Dallas.

"[T]he test for 'residency' requires some 'indicia of permanency,'" which refers to "permanency of presence . . . ." *Escallón*, 323 F. Supp. 3d at 558. Applicant's evidence shows that Minhas has ties to San Diego and that his spouse may reside here. However, even if Minhas maintains some consistent personal or business connection to San Diego, the record reflects that he has established a permanent physical presence in Dallas. While the Court does not disagree that one may have multiple residences, Applicant has not met his burden to establish that Minhas resides in San Diego within the meaning of Section 1782.

The Court acknowledges Applicant's understandable concern that Minhas did not initially provide evidence in support of his contention that he resides in Dallas. Rather, it was only after the Court directed Minhas to submit documentary evidence in support of this contention that Minhas provided the evidence upon which the Court has relied in recommending denial of the Application. Had Minhas provided this evidence earlier in the proceedings, the parties and the Court would have been spared a substantial amount of time and effort in this matter. However, based on the complete record currently before the Court, Applicant has not met his burden to establish that Minhas resides in the Southern District of California. Any Application seeking relief under Section 1782 should be filed in the Northern District of Texas, where Minhas admits he resides.

## IV.
## **RECOMMENDATION**

For the foregoing reasons, the Court concludes that Applicant has not satisfied the statutory requirements for a Court of this District to authorize discovery under Section 1782(a). **IT IS HEREBY RECOMMENDED** that the Chief District Judge issue an Order:

/ / /

1. Denying the issuance of a subpoena for the deposition of, and production of documents by, Sandip S. Minhas; and

2. Directing Applicant to serve the Order on LG; and

3. Directing the Clerk of Court to close the case.

**IT IS ORDERED** that no later than **April 25, 2023**, the parties may file written objections to this Report and Recommendation with the Court and shall serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation." The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's Order.

**IT IS SO ORDERED.**

Dated: April 11, 2023

_____
Honorable David D. Leshner
United States Magistrate Judge